UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------- X
                                                          :
BENJAMIN LEIZEROVICI,                                     :
                                                          :
                            Plaintiff,                    :     **MEMORANDUM DECISION AND**
                                                          :     **ORDER**
            - against -                                   :
                                                          :     17-CV-5774 (BMC)
 HASC CENTER, INC., BLIMA DRUKER,                         :
 MARK SCHWARTZ, YEHUDA OSIPOV,                            :
 VLAD TSUPAK,                                             :
                            Defendants.                   :
                                                          :
--------------------------------------------------------- X

**COGAN,** District Judge.

Plaintiff, an employee of the HASC Center, Inc. ("HASC"), a service provider for the disabled, alleges that he was discriminated against based on race, religion, sex/gender, and was subject to sexual harassment, a hostile work environment, retaliation, and wrongful termination. He brings his claims under Title VII, 42 U.S.C. § 1981, the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.* ("NYCHRL"). He also alleges that he was denied appropriate leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and was retaliated against after he opposed this denial. Defendants (HASC and plaintiff's supervisors at HASC) have moved to dismiss all of the claims. For the reasons discussed below, defendants' motion to dismiss is granted and denied in part.

## BACKGROUND

I.    Religious Discrimination Claims

Around November 2014, plaintiff began his employment with HASC as a Direct Care Counselor for people with special needs. At the time, plaintiff practiced Orthodox Judaism and wore corresponding religious attire. In March 2015, plaintiff stopped practicing Orthodox

Judaism and began practicing what he describes as "Traditional Judaism."[1]  He accordingly stopped wearing Orthodox attire.

In March 2016, Yehuda Osipov, one of plaintiff's supervisors, told plaintiff on a near daily basis that his hair was too long and was not up to Orthodox code.  In April and May, Osipov repeated his comments that plaintiff's hair was too long.  On at least two occasions, Osipov told plaintiff that he risked getting fired if he did not cut his hair.  Osipov repeatedly stated that his concerns were coming from Blima Druker, an HASC Area Coordinator, in one instance saying, "[l]isten, it's not coming from me, it's from Blima, I'm just looking out for your best interest."  In March 2016, Osipov told plaintiff to hide when Druker arrived at a house at which he was working, so that she would not see his long hair.

II.    Sexual Harassment/Sex and Gender Discrimination Claims

Around October 2015, while working at an HASC residence (the "8th Street residence"), plaintiff was on several occasions awoken in the middle of the night to find a resident (the "Resident"), touching him and stripping in front of him.  On several occasions, the Resident also asked plaintiff to watch pornographic films with him.  That month, plaintiff complained to Osipov, who said that he had the same kind of problem when he worked at the residence. Osipov said he would talk to Mark Schwartz, an HASC supervisor, and "see what we will do about it."  Plaintiff claims that defendants did not take corrective action.

In February 2016, Osipov again assigned plaintiff to the 8th Street residence.  It is unclear if plaintiff worked at the residence between October 2015 and February 2016.

---

[1] "Orthodox Judaism is distinguished by its maintenance of the traditional forms of worship in the Hebrew language, and of the traditional observances as prescribed by the Torah."  Israel & Judaism Studies, http://www.ijs.org.au/Variants-within-Judaism/default.aspx.   (last visited Feb. 26, 2018).  Plaintiff describes that he switched from practicing Orthodox Judaism to practicing "Traditional Judaism," but the practice he describes may accord with better-known "Modern Orthodox," or "Conservative Judaism." See generally Jewish Virtual Library, http://www.jewishvirtuallibrary.org/background-and-overview-of-conservative-judaism (last visited Feb. 26, 2018).

Plaintiff complained about the assignment to both Osipov and Schwartz. When plaintiff asked Schwartz to "please find someone else," Schwartz replied, "[i]f you don't want to come in tomorrow to work at east 8th, then I'll just have to let you go." Plaintiff complied and worked the shift, and the Resident acted in a sexually inappropriate sexual manner throughout. Plaintiff refused to enter the Resident's room. The next week, defendants removed plaintiff from all Sunday morning shifts. Plaintiff alleges that Osipov told him that Schwartz "decided that we are going to be taking [plaintiff] off Sundays because [plaintiff] didn't make the shift work."

Beginning in February 2016 and continuing through May, Vlad Tsupak, a senior counselor, who appears to have had supervisory authority over plaintiff, daily asked plaintiff about the sex life of his brother, Chaim Leizerovici (who has filed his own suit in this Court) with his brother's girlfriend, in explicit terms. Starting in March 2016, and also continuing through May 2016, Tsupak asked plaintiff a series of vulgar questions about plaintiff's own sex life. Many of Tsupak's questions turned, in crass terms, on the Mexican ethnicity of plaintiff's girlfriend. Plaintiff asked Tsupak to stop both lines of questions. On several occasions, Tsupak responded to plaintiff's request by saying, "I'm your senior counselor, so I can say whatever I want." Beginning in February 2016, and continuing through May 2016, Tsupak also mocked plaintiff for his long hair, stating, for example, that he was a "woman [who] belongs in the kitchen." In April 2016, plaintiff complained to Schwartz about Tsupak. Schwartz said that plaintiff was not the first person to complain, and said that he would take care of it.

III.   Family and Medical Leave Act Claims

In May 2016, plaintiff took a medical leave to recover from an injury. In July 2016, after he recovered, plaintiff called Schwartz and requested his prior shifts. Schwartz informed plaintiff that his shifts were unavailable because defendants had found a replacement. Schwartz

offered plaintiff only Sunday shifts, which effected a substantial reduction in his hours, resulting in a $225 pay cut per week.  Plaintiff alleges that he worked the requisite number of hours within the preceding 12 months prior to the request to qualify for FMLA coverage, that he followed proper procedures, that he was an eligible employee, and that defendants were covered employers.

IV.    Termination

In August 2016, Schwartz called plaintiff and told him he was fired.  When plaintiff asked for a reason, Schwartz repeatedly said, "[w]e are trying to make new changes around the residence."

**DISCUSSION**

The Supreme Court has defined the standard on a motion to dismiss for failure to state a claim as a "two-pronged approach." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, a court must construe a complaint's factual allegations as true, but need not accept the veracity of legal conclusions.  Id. at 678.   A "complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancement."  Id. (internal quotations and alterations omitted).  Likewise, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions are inadequate . . . ." Cox v. Nassau Cty. Corr. Ctr., No. CV 11-1937, 2013 WL 831194, at *1 (E.D.N.Y. Feb. 15, 2013), report and recommendation adopted, No. 11-CV-1937, 2013 WL 828949 (E.D.N.Y. Mar. 6, 2013).  "While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions." ECOR Sols., Inc. v. Malcolm Pirnie, Inc., No. 1:02CV01103, 2005 WL 1843253, at *3 (N.D.N.Y. July 29, 2005).

Second, a court must determine whether the complaint "states a plausible claim for relief," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Accordingly, to defeat a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation omitted). Therefore, the "plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citation omitted). Neither legal conclusions nor "[t]hreadbare recitals of the elements of a cause of action" state a claim because "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79 (citation omitted).

I. Claims under Title VII

    A. *Discrimination*

        1. Timeliness

"For a Title VII claim to be timely, the alleged discriminatory conduct must have occurred less than 300 days prior to the filing of the [Equal Employment Opportunity Commission ("EEOC")] charge." Taylor v. City of New York, 207 F. Supp. 3d 293, 300 (S.D.N.Y. 2016). "This statutory requirement is analogous to a statute of limitations." Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996). "As such, it is meant to put the adversary on notice to defend within a specified period and to promote the right to be free of stale claims." McPherson v. New York City Dep't of Educ., 457 F.3d 211, 214 (2d Cir. 2006)

(internal quotations omitted).  Plaintiff submitted a Charge of Discrimination to the EEOC on

January 26, 2017, and received his Right to Sue Letter on April 25, 2017.  Therefore, plaintiff

may only bring claims under Title VII arising out of discriminatory conduct that took place after

April 1, 2016 (300 days before he filed his EEOC complaint).  See Szuszkiewicz v. JPMorgan

Chase Bank, 12 F. Supp. 3d 330, 338 (E.D.N.Y. 2014).

2.  Sufficiency

"[A]n employment discrimination plaintiff need not plead a *prima facie* case of

discrimination, [but] dismissal is nevertheless appropriate where the plaintiff failed to allege

even the basic elements of a discriminatory action claim."  Jones v. City of New York, No. 14-

CV-0826, 2015 WL 502227, at *4 (E.D.N.Y. Feb. 5, 2015) (internal citations omitted).  Those

basic elements are first, that the "mistreatment at work occur[ed] because of . . . [a] protected

characteristic," and second, that "the action that is alleged . . . must rise to the level of an adverse

employment action."  Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007).  "[A]n action must

cause a materially adverse change in the terms and conditions of employment, and not just "mere

inconvenience, in order to qualify as 'adverse.'"  Id.  Examples of materially adverse changes

include "termination of employment, a demotion evidenced by a decrease in wage or salary, a

less distinguished title, a material loss of benefits, significantly diminished material

responsibilities, or other indices . . . unique to a particular situation."  Terry v. Ashcroft, 336 F.3d

128, 138 (2d Cir. 2003) (internal quotations omitted).  A plaintiff may plead such allegations

"either (1) directly, by alleging facts that show an intent to discriminate, or (2) indirectly, by

alleging circumstances that give rise to a plausible inference of discrimination.  Guy v. MTA

New York City Transit, No. 15-CV-2017, 2016 WL 8711080, at *6 (E.D.N.Y. Sept. 23, 2016)

(internal citations omitted).

"It is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic." Patane, 508 F.3d at 112 (internal quotations omitted).

Plaintiff plausibly alleges religious discrimination in violation of Title VII.[2]  He claims that just months before he was terminated, Osipov expressly told him that his hair was not up to Orthodox code, that he should cut it, and that if he did not, he could be fired.  Taken together, these comments suggest that plaintiff's non-compliance with defendants' religious practices were a substantial factor in their determination to fire him.   When he was actually fired (after not cutting his hair), Schwartz could only explain his termination by saying "[w]e are trying to make new changes around the residence."  Defendants did not offer a performance-based justification.

Plaintiff, in sum, describes that defendants – a healthcare agency that seems to primarily serve the Orthodox community, and its managers who apparently practice Orthodox Judaism – imposed the requirements of their religious practice upon him, and fired him when he resisted (as was his right).  At the pleading stage, plaintiff does not need to claim any more than he has; he has alleged facts sufficient to "nudge" his claim of religious-based discrimination "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

---

[2] Plaintiff alleges race discrimination as well, but at no point in his complaint does he makes any allegation that he was treated differently because of his race, ancestry, or ethnicity, as opposed to because of the mode of his religious practice.  Plaintiff also alleges sex discrimination, but does not describe any adverse employment actions arising out of his sex.  His allegations regarding sexual discrimination are best analyzed jointly with his claim for a hostile work environment.

B.  *Hostile Work Environment*

1.  Timeliness

As noted above, discrimination claims based on "discrete acts" that fall beyond the statutory time period are precluded under Title VII.  See McGullum, 609 F.3d at 75.  On the other hand,

> [h]ostile work environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.  Accordingly, consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period.

Id. (internal citations and quotations omitted).  In other words, so long as one event contributing to a hostile work environment claim is alleged to have occurred after the look-back period cutoff, that later violation "anchors" earlier, related acts, and the continuing violation doctrine allows the presentation of a timely, single claim.

Here, plaintiff's allegations of a hostile work environment can be placed into one of three categories: the first includes comments allegedly made by Osipov to express concern over plaintiff's hair; the second includes the HASC resident's inappropriate conduct; and the third includes Tsupak's sexually themed remarks.  Of these three, incidents for the first and third fell within the statutory period, so the Court can consider plaintiff's earlier hostile work environment allegations regarding them, as well.  However, plaintiff's claim as to the HASC resident are time-barred because the final allegation concerns conduct that occurred in February 2016.[3]

_____

[3] Plaintiff has not raised the continuing violation doctrine, perhaps recognizing that the alleged acts falling inside of the limitations period are not related to those falling outside of it.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 118, 122 S. Ct. 2061, 2075 (2002) ("if an act on day 401 had no relation to the acts between days 1-100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile

2.  Sufficiency

To state a hostile-work environment claim under Title VII, a plaintiff must plead facts showing that his workplace is "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citation omitted) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 67 (1986)). "[T]he plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (internal quotations omitted). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." Littlejohn v. City of New York, 795 F.3d 297, 321 (2d Cir. 2015). Critically, the complained of conduct must have been prompted by the plaintiff's status. "It is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's protected characteristic." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001); see e.g., Davis v. New York City Dep't of Corr., No. 17-CV-3863, 2017 WL 5634123, at *5 (E.D.N.Y. Nov. 22, 2017) ("Plaintiff fails to allege any relationship between such conduct and his status as a member of a protected class."); Richard v. New York City Dep't of Educ., No. 16-CV-957, 2017 WL 1232498, at *14 (E.D.N.Y. Mar. 31, 2017) ("Plaintiff does not state a hostile work environment claim because his allegations are insufficient to allege animus based on his race, color or ethnicity."). In assessing a hostile work environment claim, "courts examine the

---

environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act.").

case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." Moll v. Telesector Res. Grp., Inc., 760 F.3d 198, 203 (2d Cir. 2014) (internal quotations omitted).

Anti-discrimination laws "are intended to protect employees from genuine workplace mistreatment and harassment; they are not intended to guarantee that employees will never suffer inconveniences or that their every desire will be fulfilled." Ruggieri v. Harrington, 146 F. Supp. 2d 202, 218 (E.D.N.Y. 2001). Hostile work place claims should "not [be] intended to promote or enforce civility, gentility or even decency." Bermudez v. City of New York, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011). Thus, "Title VII does not establish a 'general civility code' for the American workplace." Petrosino v. Bell Atl., 385 F.3d 210, 223 (2d Cir. 2004). "Isolated instances of harassment ordinarily do not rise to this level." Sclafani v. PC Richard & Son, 668 F. Supp. 2d 423, 430 (E.D.N.Y. 2009).

First, plaintiff alleges that Osipov made various remarks about the length of his hair (which was apparently not up to Orthodox code), and told him to hide when Druker visited a home at which the two of them were working. These allegations fall far short of the exacting standard required to state a claim for a hostile workplace environment, which demands that a plaintiff claim that the conditions of his employment have been materially altered by discriminatorily motivated abuse. The conduct here is akin to the kind of "simple teasing, offhand comments, and isolated incidents (unless extremely serious) [that] will not amount to discriminatory changes in the terms and conditions of employment." Smith v. HBO, No. 12-CV-2177, 2013 WL 2285185, at *3 (E.D.N.Y. May 22, 2013) (internal quotations and alterations omitted). Furthermore, Osipov's comments cannot serve as the basis for plaintiff's argument because a hostile work environment claim must describe conduct motivated by plaintiff's

protected characteristic. Long hair is not such a characteristic, and plaintiff makes no allegation that his hairstyle was an element of his religious practice.

Second, plaintiff alleges that Tsupak made a host of sexually explicit comments. Tsupak's remarks, however, were not based on plaintiff's membership in a protected class, but instead, on his girlfriend's and his brother's girlfriend's status in a protected class. To give rise to a hostile work environment claim, "the conduct at issue cannot be merely tinged with offensive sexual connotations, but must actually constitute discrimination because of sex." Merhige-Murphy v. Vicon Indus., Inc., No. CV-07-1526, 2008 WL 111163, at *3 (E.D.N.Y. Jan. 7, 2008) (internal quotations and alterations omitted); see e.g., Marchioli v. Garland Co., No. 5:11-CV-124, 2011 WL 1983350, at *5 (N.D.N.Y. May 20, 2011) ("[P]laintiff fails to allege that the alleged hostile work environment was created because of his sex. Rather, all of the allegations in the complaint allege that he was harassed because of his girlfriend's pregnancy and the fact that he was soon to be a parent.").

In Dottolo v. Byrne Dairy, Inc., No. 08-CV-0390, 2010 WL 2560551, at *5 (N.D.N.Y. June 22, 2010), the plaintiff's supervisor asked him a vulgar question about his wife (remarkably similar to some of those Tsupak asked plaintiff). Acknowledging that the question was "juvenile, crude and vulgar," the court there nevertheless held that "[p]laintiff has failed to allege facts plausibly suggesting that [the supervisor] posited an unwelcome question to [p]laintiff *because* of his sex." Id. (emphasis added). "Such remarks, while deplorable, are precisely the sort of non-work-related social comments that . . . fall outside the scope of employment discrimination law." Nicolosi-Russo v. Program Brokerage Corp., No. 05 CIV. 9373, 2006 WL 3690654, at *3 (S.D.N.Y. Dec. 13, 2006). Claims "relying solely on allegations of defendant's discriminatory attitude toward, or treatment of, non-employees," are insufficient. Id.

Fatal to plaintiff's hostile work environment claim is the rule that "an *offensive* work environment does not constitute a *hostile work environment* in the statutory sense unless the offensiveness is discriminatorily inflicted on members of a protected group" of which plaintiff is a member.  Id.  Tsupak's alleged remarks were crude, but not actionable under Title VII.

C. *Retaliation*

1. Timeliness

Because plaintiff's retaliation claim turns on discrete adverse acts, it, like his discrimination claim, discussed above, requires the underlying adverse action to have occurred within the statutory period.  Accordingly, plaintiff can plead retaliation based on his termination.

2. Sufficiency

Title VII provides that an employer may not "discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful practice [by Title VII.]" 42 U.S.C. § 2000e–3(a).  "Retaliation occurs when an employer takes action against an employee not because of his ethnicity, but because he engaged in protected activity – complaining about or otherwise opposing discrimination."  Vega, 801 F.3d at 91.  Therefore, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated – or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice."  Id. at 89-90.  "Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action."  Id. at 90.

"[I]n the context of a Title VII retaliation claim, an adverse employment action is any action that could well dissuade a reasonable worker from making or supporting a charge of

discrimination." Id. (internal quotations omitted). "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII." Id. "Protected activity for purposes of Title VII [] retaliation claims encompasses an employee's complaint to supervisors about alleged unlawful activity, even if the activity turned out not to be unlawful, provided that the employee had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII." Irons v. Bedford-Stuyvesant Cmty. Legal Servs., No. 13-CV-4467, 2015 WL 5692860, at *19 (E.D.N.Y. Sept. 28, 2015).

Plaintiff complained about two kinds of alleged violations of Title VII: the Resident's behavior, and Tsupak's offensive comments.

As discussed above, plaintiff's allegations about the Resident are time-barred and cannot serve as the basis for his hostile work environment claim. On the other hand, his claim of *retaliation* based on his complaints about the Resident's conduct is not time-barred, as it runs from his termination. Plaintiff describes repeatedly complaining to Osipov and Schwartz about the Resident. He detailed to them the Resident's inappropriate conduct. Plaintiff would be entitled to hold a good faith belief that he was describing conduct giving rise to a hostile work environment claim under Title VII – he presented to his supervisors a pattern of unwanted sexual touching and requests. When plaintiff lost shifts after walking out of the home with the Resident, plaintiff was told that it was punishment for not "making the shift work." Plaintiff was terminated roughly six months later and was not given a substantive reason for his dismissal.

"A plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) (internal quotations and alterations omitted). There is no bright line rule in the Second

Circuit for the duration of a period between a protected activity and an adverse action that can support such an inference. See Ellis v. Century 21 Dep't Stores, 975 F. Supp. 2d 244, 284 (E.D.N.Y. 2013) (collecting cases). However, courts in the circuit have held that four and five month gaps are not too attenuated. See Id. (collecting cases).

The problem with plaintiff's claim is that he does not plausibly allege that his *six month old* complaints were a "but-for" cause of his termination. Had plaintiff described that he complained and was fired within a month, or even two, of his complaints, he would likely have stated a claim. But it is not plausible to conclude that defendants stifled their retaliatory intent for half a year before acting, and that during all of those intervening months plaintiff's complaints remained the but-for cause of his eventual termination.

Similarly, plaintiff could in good faith have reasonably believed that Tsupak's comments constituted a hostile work environment. Plaintiff describes complaining to Schwartz, an HASC supervisor, about Tsupak's comments in April, just months before he was fired. This was protected activity. Plaintiff was then terminated, without explanation, months after his complaint. However, the same reasoning compelling the dismissal of plaintiff's retaliation claim on the basis of his complaints about the Resident apply with equal force here: it is simply not plausible, without more, that his single complaint in April remained a but-for cause of his termination in August.

II. Claims Under the Civil Rights Act of 1866

Section 1981 of Title 42 of the United States Code guarantees in relevant part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a) (emphasis added). Section 1981 thus "outlaws discrimination with respect to the

14

enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 224 (2d Cir. 2004).

However, "[i]t is [] settled that Section 1981 does not prohibit discrimination on the basis of gender or religion . . . ." Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998); see also Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987). Although the Second Circuit has held that the Jewish "race" is protected under § 1981 from race-based discrimination, United States v. Nelson, 277 F.3d 164, 177-78 (2d Cir. 2002), the statute does not provide a remedy for discrimination against Jews that turns on the mode of their religious observance, as opposed to their ancestry. See e.g., Kratz v. Coll. of Staten Island, No. CIV.A. 96-CV-0680, 2000 WL 516888, at *3 (E.D.N.Y. Mar. 15, 2000) (granting summary judgment dismissing plaintiff's § 1981 claim when plaintiff alleged only that he was discriminated against "for being a non-observant Jew," because plaintiff had not described discrimination based on his Jewish ancestry.).

Plaintiff's claim for religious-based discrimination thus is not actionable under § 1981.

III.    Claims Under the FMLA

"Under the FMLA, eligible employees are entitled to twelve weeks of leave when they have a serious health condition. At the end of the leave period, with few exceptions . . . each eligible employee must be restored to his old position or an equivalent position." Fernandez v. Windmill Distrib. Co., 159 F. Supp. 3d 351, 362 (S.D.N.Y. 2016), reconsideration denied, No. 12-CV-1968, 2016 WL 4399325 (S.D.N.Y. Aug. 17, 2016) (internal citations omitted). "The Second Circuit recognizes two types of FMLA claims – 'interference' claims and 'retaliation' claims." Id. An interference claim alleges denial of a benefit provided under the FMLA. In a retaliation claim, a plaintiff "allege[s] that he exercised rights protected by the FMLA and that he

suffered an adverse employment action under circumstances giving rise to an inference of retaliatory intent." Id.

The Second Circuit has articulated the elements of *prima facie* interference and retaliation claims under the FMLA. To establish a *prima facie* case of FMLA interference,

> a plaintiff must establish: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA.

Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 424 (2d Cir. 2016). A plaintiff establishes a *prima facie* case of FMLA retaliation by establishing that he "1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Id.

The Second Circuit has not expressly stated what an FMLA plaintiff must plead to withstand a motion to dismiss. In a recent Second Circuit decision reviewing, *inter alia*, the dismissal of an FMLA interference claim, the Court began its analysis of that claim by describing what an FMLA plaintiff must plead to "prevail," and then articulated the elements for a *prima facie* FMLA case. See Shultz v. Congregation Shearith Israel of City of New York, 867 F.3d 298, 307 (2d Cir. 2017). The Shultz Court did not, however, state explicitly that an FMLA plaintiff must make out a *prima facie* standard to survive a motion to dismiss.

This omission accords with Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511 (2002), which made clear that a *prima facie* standard is evidentiary, and not used to evaluate if a complaint can withstand a motion to dismiss. Instead, faced with a motion to dismiss, "the ordinary rules for assessing the sufficiency of a complaint apply." Id.

In light of <u>Shultz</u>, <u>Swierkiewicz</u>, and the pleading requirements of the Federal Rules of Civil Procedure, this Court declines to require plaintiff to make out a *prima facie* case at this stage. Accordingly, an FMLA plaintiff needs to only "plead[] factual content allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. That being said, the elements of a *prima facie* FMLA case may be useful in assessing the plausibility of a complaint, as in the Title VII context.

Plaintiff alleges FMLA interference and retaliation against HASC, and although barely, alleges enough facts for each claim to withstand HASC's motion to dismiss. Plaintiff alleges that he worked a qualifying number of hours, that he followed proper procedures when requesting FMLA leave, that he was an "eligible employee" pursuant to the FMLA, and that HASC was a covered "employer" under the statute. Critically, he describes taking medical leave, requesting his regular shifts upon his return, and being told that they were unavailable because a replacement had been found. The lost shifts allegedly resulted in a substantial pay cut. These facts support a plausible inference that HASC violated plaintiff's FMLA rights. HASC might be able to defeat plaintiff's FMLA claims on summary judgment, but at this juncture, plaintiff has asserted all that is required.

IV. <u>Claims Under the NYSHRL</u>

Plaintiff's NYSHRL discrimination claims are "analyzed identically" to his Title VII claims, and "the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under Title VII." <u>Diaz v. Local 338 of Retail, Wholesale, Dep't Store Union, United Food & Commercial Workers</u>, No. CV 13-7187, 2014 WL 4364819, at *4 (E.D.N.Y. Aug. 20, 2014), <u>report and recommendation adopted</u>, 2014 WL 5502316 (E.D.N.Y. Oct. 28, 2014). Therefore, plaintiff may proceed with his religious-based discrimination claim.

Similarly, "[h]ostile work environment . . . claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006). Accordingly, plaintiff fails to state a claim under the NYSHRL for a hostile work environment on the basis of Osipov's comments about plaintiff's hair and Tsupak's vulgar remarks.

Unlike under the shorter statutory period provided by Title VII, plaintiff's hostile work environment claim based on the Resident's inappropriate conduct is not time-barred under the NYSHRL. To assert a hostile work environment claim, a plaintiff must "plead facts that demonstrate (1) that his workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Chick v. Cty. of Suffolk, 546 F. App'x 58, 59 (2d Cir. 2013) (internal quotations and alterations omitted).

Plaintiff easily satisfies the first prong: he alleges a series of severe incidents, including waking up in the middle of the night on a number of occasions to find the Resident touching plaintiff's genitals, while at the same time touching his own. The Resident also repeatedly made sexually explicit invitations to plaintiff. There can be no question that this conduct is sufficiently severe to create a hostile work environment. See Guzman v. Macy's Retail Holdings, Inc., No. 09 CIV.4472, 2010 WL 1222044, at *4 (S.D.N.Y. Mar. 29, 2010) (noting that courts in the Second Circuit have routinely held that conduct similar to an allegation that a co-worker "rubbed his genitals against [plaintiff's] body" is sufficient to deny a motion to dismiss, and, in some instances, a motion for summary judgment).

As to the second prong, employers may be liable under a hostile work environment theory for the conduct of a plaintiff's *co-workers* if the employer was "negligent in controlling working conditions." Lekettey v. City of New York, 637 F. App'x 659, 662 (2d Cir. 2016). However, the Second Circuit has not yet decided whether an employer may be held liable under a hostile work environment theory for the conduct of non-employees. See Gen. v. Ctr. for Disability Rights, 481 F. App'x 678, 679-80 (2d Cir. 2012). Some district courts in the circuit "have found that such actions may be imputed to the employer if it failed to take steps 'reasonably calculated to end the harassment.'" Evert v. Wyoming Cty. Cmty. Health Sys., No. 14-CV-912S, 2017 WL 1832051, at *5 (W.D.N.Y. May 8, 2017) (internal citations and quotations omitted). Based on the allegations in plaintiff's complaint, there is a plausible claim here.

First, on several occasions, plaintiff himself complained to two supervisors about the Resident's behavior. HASC was on notice. Second, as described in plaintiff's complaint, the Resident appears to have been a full-time resident of an HASC facility, under defendants' care, and presumably, subject to a degree of their control. This situation is far afield from an anonymous restaurant or store customer making unwanted advances against an employee; instead, insofar as HASC's control and responsibility is concerned, the Resident appears to occupy a middle ground between itinerant customer and regular employee, sufficient to make HASC accountable for his conduct towards plaintiff. Despite notice, HASC nevertheless initially compelled plaintiff to work another shift with the Resident. The alleged facts present an adequate basis to hold that HASC knew about the plaintiff's experiences and took no steps to address them.

The same analysis applies to retaliation claims brought under the NYSHRL and Title VII. See id., 445 F.3d at 609 ("[R]etaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII.").  Plaintiff's retaliation claims turning on his termination after complaining about the Resident and Tsupak are dismissed for the reasons discussed above.  However, under the longer, three-year statute of limitations under the NYSHRL, plaintiff can also assert a retaliation claim for losing shifts after complaining about the Resident.  Plaintiff's allegation that Osipov told him that Schwartz "decided that we are going to be taking [plaintiff] off Sundays because [plaintiff] didn't make the shift work" plainly states a claim for retaliation: he had the good faith belief that the resident's conduct was in violation of anti-discrimination and anti-harassment statutes, he engaged in a protected activity by complaining about that conduct, and then he suffered an adverse employment event – losing shifts – under circumstances that expressly suggest that his complaint was a but-for cause of that event.

Plaintiff also brings claims under the NYSHRL for aiding and abetting.  "The NYSHRL states that it shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under" the statute.  Feingold v. New York, 366 F.3d 138, 157-58 (2d Cir. 2004).  "[A]n individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he "actually participates in the conduct giving rise to a discrimination claim."  Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 107 fn.10 (2d Cir. 2011).[4]

---

[4] See Conklin v. Cty. of Suffolk, 859 F. Supp. 2d 415, 436 (E.D.N.Y. 2012) ("Nevertheless, the law in this Circuit seems clear that a defendant may be held liable for aiding and abetting allegedly unlawful discrimination by her employer even where her actions serve as the predicate for the employer's vicarious liability.  However, as the employee's liability necessarily hinges on that of the employer, the employer must be held liable for an individual to also be held liable under this provision.").

Plaintiff has stated a claim for aiding and abetting liability against Druker, Osipov and Schwartz. Warnings through Osipov about plaintiff's tenure seem to have started with Druker; Osipov himself communicated the warnings; and Schwartz actually fired plaintiff. Because a plausible inference can be drawn that defendants committed these acts based on a common discriminatory motivation, plaintiff may proceed with his aiding and abetting claim against these defendants. Furthermore, despite knowing about the Resident's conduct, Schwartz told plaintiff that he would be let go if he did not return to work a shift with the Resident. Another time, Osipov relayed the same message from Schwartz to plaintiff, while also aware of the Resident's behavior. Each of these defendants directly contributed to plaintiff's alleged hostile work environment. However, plaintiff has not stated a claim for aiding and abetting liability against Tsupak, who is not alleged to have aided and abetted anyone else's discrimination.

V. <u>Claims Under the NYCHRL</u>

"Courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." <u>Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.</u>, 715 F.3d 102, 109 (2d Cir. 2013) (internal citations and quotations omitted). "[E]ven if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." <u>Id.</u> "The statute of limitations for claims under . . . [the] NYCHRL is three years." <u>Soloviev v. Goldstein</u>, 104 F. Supp. 3d 232, 246 (E.D.N.Y. 2015)

A. *Discrimination*

To state a discrimination claim under the NYCHRL, the plaintiff "must only show differential treatment of any degree based on a discriminatory motive." <u>Gorokhovsky v. N.Y.C.</u>

Hous. Auth., 552 Fed. App'x 100, 102 (2d Cir. Jan. 29, 2014) (quoting Mihalik 715 F.3d at 114);

see also Pryor v. Jaffe & Asher, LLP, at *3 (S.D.N.Y. Jan. 15, 2014) (citing Williams v. N.Y.C.

Hous. Auth., 61 A.D.3d 62, 872 N.Y.S.2d 27, 39 (2009)). "[U]nlike under state and federal law,

plaintiff need not show that an employment action was materially adverse." Sotomayor v. City

of New York, 862 F. Supp. 2d 226, 258 (E.D.N.Y. 2012), aff'd, 713 F.3d 163 (2d Cir. 2013).

However, "[t]he plaintiff still bears the burden of showing that the conduct is caused by a

discriminatory motive . . . *i.e. because of* the protected characteristic." Soloviev, 104 F. Supp. 3d

232, 250 (E.D.N.Y. 2015) (internal quotations and alterations omitted) (emphasis in original).

Since plaintiff has satisfied his pleading burden under Title VII and the NYSHRL as to

religious-based discrimination, his religious discrimination claim also passes under the more

liberal standard used for the NYCHRL. As with his Title VII claims, his claims for race and

gender based discrimination also fail under the NYCHRL because plaintiff simply does not

allege differential treatment based on either of those protected characteristics.

B. *Aiding and Abetting*

Plaintiff also asserts aiding and abetting claims under the NYCHRL. "The same

standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to

such claims under the NYCHRL because the language of the two laws is 'virtually identical.'"

Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004).

Because plaintiff has adequately plead his aiding and abetting claim under the NYSHRL

against certain defendants, he may proceed against them with a congruent NYCHRL claim.

C. *Hostile work environment*

To state a hostile work environment claim under NYCHRL, a plaintiff need only allege

differential treatment of any degree based on a discriminatory motive. See Gorokhovsky, 552

Fed. App'x at 102 (citing <u>Mihalik</u>, 715 F.3d at 114). "In a hostile work environment claim under the NYCHRL, even a single comment may be actionable in appropriate circumstances." <u>Id.</u> (internal quotations omitted). "Under the NYCHRL, defendants' discriminatory conduct need not be 'severe or pervasive' to create an actionable hostile work environment." <u>Sotomayor</u>, 862 F. Supp. 2d at 261. However, "notwithstanding the liberal construction accorded to such claims . . . the NYCHRL is not a general civility code, and a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives." <u>Berlyavsky v. New York City Dep't of Envtl. Prot.</u>, No. 14-CV-03217, 2015 WL 5772266, at *11 (E.D.N.Y. Aug. 28, 2015), <u>report and recommendation adopted as modified,</u> No. 14-CV-3217, 2015 WL 5772255 (E.D.N.Y. Sept. 30, 2015).

As described above, plaintiff alleges a hostile work environment because of comments allegedly made by Osipov to express concern over plaintiff's hair; an HASC resident's inappropriate conduct; and Tsupak's sexually themed remarks.

Even under the more liberal NYCHRL standard, plaintiff cannot state a claim for a hostile work environment based on the first and third allegations. As to Osipov's comments, the same analysis that prevents plaintiff from stating a claim under Title VII and the NYSHRL applies here: plaintiff has not sufficiently alleged that the comments were directed at him because of his membership in a protected class. As to Tsupak's comments, plaintiff has not alleged that they were driven by discriminatory animus against a protected characteristic of *his*, as opposed to of his girlfriend, or his brother's girlfriend.

On the other hand, plaintiff may proceed with his NYCHRL hostile work environment claim based on the Resident's conduct for the same reasons that he may proceed with his parallel NYSHRL claim.

D. *Retaliation*

"[T]o prevail on a retaliation claim under the NYCHRL, a plaintiff need only show that

he took an action opposing [his] employer's discrimination, and that, as a result, the employer

engaged in conduct that was reasonably likely to deter a person from engaging in such action."

Anglisano v. New York City Dep't of Educ., No. 14-CV-3677, 2015 WL 5821786, at *10

(E.D.N.Y. Sept. 30, 2015) (internal quotations and citations omitted).

Plaintiff may proceed with his NYCHRL retaliation claim on the basis of losing shifts

after complaining about the Resident.  His termination, however, is too far removed from his

complaints about the Resident and Tsupak to serve as a basis for his retaliation claim under the

NYCHRL, just as it is under Title VII and the NYSHRL.

E. *Interference*

 "Section 8-107(19) of the NYCHRL prohibits any person to coerce, intimidate, threaten

or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the

enjoyment of . . . any right granted or protected pursuant to this section."   N.Y. City Admin.

Code § 8-107(19).  In other words, Section 8-107(19) "makes actionable intimidation, threats or

interference with . . . a person's exercise or enjoyment of rights protected under [the

NYCHRL]."  Harrison v. SUNY Downstate Med. Ctr., No. 16CV1101, 2017 WL 4326507, at *6

(E.D.N.Y. Sept. 25, 2017).  "Threats are required to state a claim for violation of [Section 8-

107(19)]."  Keles v. Yearwood, 254 F. Supp. 3d 466, 476 (E.D.N.Y. 2017).  "As defined in the

Second Circuit, a 'threat' is the creation of an impression of impending injury."  Sletten v.

LiquidHub, Inc., No. 13 CIV. 1146, 2014 WL 3388866, at *5 (S.D.N.Y. July 11, 2014) (internal

quotations and alterations omitted).

Plaintiff alleges that Osipov told him nearly daily that his hair was too long and on several occasions said that plaintiff risked his job if he did not cut it. This is sufficient to state a claim for interference under the NYCHRL, because plaintiff was threatened with the loss of employment if he did not conform his appearance to particular religious standards. Plaintiff also alleges that after complaining about the Resident's behavior, Schwartz told him that he would "have to let you go" if he did not return to the same shift at which he had been subject to inappropriate sexual conduct. The threat of the loss of work if he did not continue to put himself in a work environment that allegedly violated his right to be free from sexual harassment also states a claim for interference.

F. *Employer Liability*

"The NYCHRL imposes strict liability on employers for discriminatory acts of managerial employees." Garrigan v. Ruby Tuesday, Inc., No. 14 CIV. 155, 2014 WL 2134613, at *6 (S.D.N.Y. May 22, 2014). "Under NYCHRL, an employer is liable for the discriminatory acts of its employees if the employer (1) knew about the employee's conduct and failed to take immediate corrective action, or (2) should have known of the employee's conduct and failed to exercise due diligence to prevent it." Hopper v. Banana Republic, LLC, No. 07 CIV. 8526, 2008 WL 490613, at *3 (S.D.N.Y. Feb. 25, 2008). As described above, plaintiff alleges discriminatory conduct and a hostile work environment caused, in part, by defendants in a managerial position. A plausible inference may be drawn from his factual allegations that HASC had actual and constructive knowledge of its managers' conduct. Plaintiff has therefore stated a claim for employer liability under the NYCHRL.

## CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part as set forth above.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       February 27, 2018